UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of<br>STENN ASSETS UK LIMITED,<br><br>For an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings | Case No. 20 Misc._____ |

### DECLARATION OF JAMES FOX IN SUPPORT OF APPLICATION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

I, the undersigned, James Fox, under oath and penalty of perjury, pursuant to 28 U.S.C. § 1746, and duly authorized, declare the following:

1.  I am over the age of 18 and the facts set forth herein are based on my own personal knowledge or from information provided to me by others. Where facts are within my personal knowledge, I can affirm that they are true. Where the information is provided to me by others, I state the source of my knowledge and affirm it is true to the best of my information and belief.

2.  I am a Solicitor of the Senior Courts of England and Wales, registered practitioner by the Dubai Legal Affairs Department and registered practitioner with rights of audience before the Dubai International Financial Centre ("DIFC") Courts. I am counsel for Stenn Assets UK Limited ("Applicant") in the contemplated foreign proceeding described below.

3.  I submit this Declaration in support of Applicant's application for an Order, pursuant to 28 U.S.C. § 1782, authorizing intermediary bank discovery in connection with a contemplated foreign arbitration proceeding under the auspices of the Dubai International Financial Centre-London Court of International Arbitration ("DIFC-LCIA") by Applicant

69467939-1

against Arion Metals FZE ("Arion") to recover a debt in the amount of USD 1,083,166.74 owed by Arion to Applicant.

## I. FACTUAL BACKGROUND

4. Applicant is a global trade financing company that purchases accounts receivables and funds purchase orders, providing liquidity for buyers and suppliers engaged in international trade.

5. Arion is a metals trading company based in Ras-al-Khaimah, United Arab Emirates ("UAE"), bearing the registration number 5018026. Based upon Applicant's investigation, Arion's sole shareholder and managing director is Ajith Rao Sridhar, also known as Ajeet Rao ("Rao"), and it appears that Arion remains an active commercial entity operated by Rao.

### A. The Underlying Debt

6. On October 15, 2018 and October 22, 2018, respectively, Applicant entered into identical Framework Agreements with two Arion suppliers, (1) Sidessa Far East (HK) Limited ("Sidessa") based in Hong Kong, and (2) Golden Rich Trading Company ("Golden Rich"), also based in Hong Kong. (Exhibits 1-2).

7. Under the terms of the Framework Agreements, Sidessa and Golden Rich assigned their interest to payments due and owing from Arion arising out of certain accounts receivable. *Id*.

8. Between December 2018 and February 2019, Sidessa assigned the following Arion accounts receivable totaling USD 1,060,140.31:

- Invoice No. 13435 for USD 327,969.29 (Exhibit 3);
- Invoice No. 13591 for USD 219,160.60 (Exhibit 4);
- Invoice No. 13599 for USD 513,010.42 (Exhibit 5).

9. In March 2019, Golden Rich assigned a single account receivable bearing number S10586AM-0319 for USD 23,026.43 to Applicant. (Exhibit 6).

10. For each assignment of invoices to Applicant, Arion countersigned a Notice of Assignment of Accounts Receivables provided by Sidessa and Golden Rich. (Exhibits 7-10). These Notices (i) detail the invoice number and the amount owed by Arion; (ii) affirm that the titles to the goods related to the accounts receivable passed from the supplier to Arion; and (iii) reiterate Arion's obligation to pay the underlying debt.

11. The total sum due and outstanding to Applicant pursuant to both Framework Agreements is USD 1,083,166.74 (the "Debt") (Exhibits 1-2).

### B. The Indemnity Agreements

12. In addition to the Framework Agreements and the Notices of Assignment, Arion executed multiple Indemnity Agreements (together the "Agreements") pledging to indemnify Applicant for all liabilities, costs, expenses, damages and losses arising out of the Notices of Assignment issued by Sidessa and Golden Rich. (Exhibits 11-14).

13. The Indemnity Agreements contain identical arbitration clauses at Section 2.3 of the respective Indemnity Agreements which provide that any dispute arising out of the Indemnity Agreements will be resolved by arbitration in accordance with the Arbitration Rules of the DIFC-LCIA Arbitration Centre. *Id*. The Indemnity Agreements further provide that the seat of the arbitration shall be the DIFC, Dubai, UAE and that the governing law shall be the laws of England and Wales. *Id,* Section 2.2.

C. **Collection Efforts and Investigation**

14. Notwithstanding its obligations under the Agreements, Arion has failed to make any of the required payments and the entirety of its Debt remains outstanding.

15. In or around August 2019, when the debts at issue were each over 120 days overdue, Applicant commenced direct communications with Arion in an effort to resolve the matter amicably. On information or belief, in the course of these communications, Arion strongly inferred that it would not be making any payment to the Applicant.

16. In addition, Applicant provided me with certain account statements of Arion, which I am informed Arion voluntarily provided to the Applicant, reflecting that millions of dollars, more than enough to cover the Debt owed to Applicant, passed through Arion's accounts well after the payments were past due:

- Exhibit 15, a bank statement for a Dirham account held by Arion with Mashreq bank, shows that from July 2019 to November 2019, Arion made nearly two hundred (200) transactions, including wire transfers exceeding AED 1,000,000.00 (USD 272,260) (*see* Ex. 15 at pp. 8, 30).

- Exhibit 16, a bank statement for a U.S. Dollar account held by Arion with Mashreq bank, shows that from June 2019 to September 2019, Arion made a dozen transactions of up to USD 100,000.00 (*see* Ex. 16 at p. 1).

- Exhibit 17, bank statements for U.S. Dollar and Euro accounts held by Arion with First Abu Dhabi Bank, shows that between March 2019 and November 2019, Arion made dozens of transactions in both currencies, including transfers exceeding USD 1,000,000.00 (*see* Ex. 17 at p. 2).

- Exhibit 18, a bank statement for a U.S. Dollar account held by Arion with Emirates NBD Bank, shows that over two days in June 2019, Arion made nineteen (19) transactions exceeding USD 1,000,000.00.

I understand this activity led Applicant to reasonably believe that Arion and its principals have dissipated and misappropriated assets that should have been used to pay the Debt owed to Applicant.

17. In the course of its investigation, I am advised Applicant has identified a series of companies associated with Rao, the sole shareholder and managing director of Arion:[1] (i) Prospecz Hotel Supplies FZ LLC, a company believed to be based in Ras al Khaimah, UAE; (ii) Meraki International Electronics Trading LLC, a company believed to be based in Dubai, UAE; (iii) Arion Holiday Homes Rental LLC, a company believed to be based in Dubai, UAE; (iv) Diggvijay Infrastructure, a company believed to be based in India; (v) Arion Investments FZE, a company believed to be based in Dubai, UAE; and (vi) Aspire Metals Trading LLC, a company believed to be based in Dubai, UAE.

18. In addition, the provided account statements show that the following companies, with limited or no discernable public profile,[2] appear to have engaged in suspicious transactions with Arion:[3] (i) Pheonix General Trading LLC; (ii) Shreeji Overseas, a company believed to be based in Ajman Free Zone, UAE; (iii) Twilight Star General Trading, a company believed to be based in Dubai; (iv) Arion Investments FZE; and (v) Aspire Metals Trading LLC. (Exhibits 15-18).

19. Further, Applicant identified several account numbers in the bank account statements ("Accounts"): (i) Arion's AED account with Mashreq bank No. ending 8549; (ii) Arion's USD account No. ending 8550; (iii) Arion's Euro account with First Abu Dhabi Bank No. ending 0031; (iv) Arion's USD account with First Abu Dhabi Bank No. ending 0020; (v) Arion's AED account with First Abu Dhabi Bank No. ending 0019; (vi) Arion's USD account

---

[1] I understand that Applicant identified those companies through Rao's LinkedIn account, in which Rao explains his experience in financing and investing in those companies. Rao's LinkedIn account can be found at https://www.linkedin.com/in/ajeet-rao-60646052/?originalSubdomain=ae (last visited February 26, 2020). For example, Rao states: "Building on the success of Arion Metals FZE, I continued to invest in a number of companies."

[2] According to Applicant's investigation, those companies generally have no active website or media account.

[3] The account statements show multiple incoming wire transfers of funds from those companies over a very short period of time. Those funds are then transferred to what appear to be metals traders. (Exs. 15-18).

with Emirates NBD bank, Jumeirah branch No. ending 2702; (vii) Rao's account with Mashreq bank No. ending 0593; (viii) account at an unknown bank that received USD 1,010,940.91 from Arion's Emirates NBD account No. ending 2702 on June 17, 2019.

20. Anusha Sridhar Rao, who we believe to be Rao's daughter, was also the recipient of Arion funds designated for "Educational Support." (Exhibit 16).

## II. THE CONTEMPLATED FOREIGN PROCEEDING AND FOREIGN TRIBUNAL

21. Considering Arion's refusal to pay the Debt despite Applicant's repeated demands and efforts to collect on its Debt, Applicant is now contemplating initiating an arbitration proceeding under the auspices of the DIFC-LCIA in accordance with the Indemnity Agreements. Applicant intends to advance claims for (1) breach of contract for Arion's failure to comply with its obligations under the Agreements by refusing to pay its Debt owed to Applicant, and (2) for fraudulent misrepresentation in supplying the account statements to evidence an ability to pay without any intention to actually do so (collectively, the "Claims") (the "Contemplated Arbitration Proceeding").

The Claims

22. The first claim arises from a breach of the Agreements. As addressed above, in accordance with the wording of the Indemnity Agreements, Arion agreed to indemnify the Applicant "*against all liabilities, costs, expenses, claims, damages and losses*." (Exs. 11-14, Section 1.1). Furthermore, section 1.2 provides that the indemnification by Arion is a "*continuing obligation*" and "*shall remain in full force and effect until all the amounts due and payable under the Notice… are paid in full and duly received*" by the Applicant. *Id.* Arion's refusal to make any payments in accordance with the Agreements is a direct breach of sections 1.1 and 1.2 above. As the United Kingdom House of Lords held in *Caledonia North Sea Limited*

-6-

*v. British Telecommunications Plc (The Piper Alpha)* [2002] UKHL 4, an indemnity gives rise to an obligation of the indemnifier to compensate the indemnified party. In circumstances such as this, the indemnified party will have a claim under the contract for the sum payable under the indemnity.

23. The second claim arises from bank account statements, provided by Arion to the Applicant, as evidence to induce the Applicant into deferring enforcement proceedings arising out of the Debt. There is no clear evidence that Arion intended to comply with the representations made to Applicant. This therefore arises as a claim for fraudulent misrepresentation, as Applicant alleges that a false representation has been made knowingly, and/or without belief in its truth, and/or recklessly as to its truth, which induced the Applicant. The English High Court in *BV Nederlandse Industrie Van Eiprodukten v. Rembrandt Enterprises, Inc* [2018] EWHC 1857 (Comm) held that, to determine whether an inducement has occurred, the test is 'but for' the misrepresentation, would the party have entered into the terms in which he did. Furthermore, to establish a claim for fraudulent misrepresentation, the test had been made broader for claimants. The test is now one of 'but for' the misrepresentation, might the party have acted differently. Here, Applicant would have acted differently, but for Arion's fraudulent misrepresentation.

The DIFC-LCIA Arbitral Tribunal

24. The DIFC-LCIA Arbitration Centre is essentially a joint venture between the DIFC Arbitration Institute and the London Court of International Arbitration.[4] The DIFC-LCIA is headquartered in the DIFC.[5] The DIFC is a financial centre and is a special jurisdiction in the

---

[4] http://www.difc-lcia.org/why-was-the-difc-lcia-established.aspx (explaining why the DIFC-LCIA was established) (last visited February 4, 2020).

[5] http://www.difc-lcia.org/why-is-difc-lcia-the-preferred-alternative-dispute-resolution.aspx (explaining the DIFC Court system) (last visited February 4, 2020).

Emirate of Dubai with an up-to-date arbitration law based on the UNCITRAL Model Law (DIFC Law No. 1 of 2008). The DIFC-LCIA Arbitral Tribunal usually consists of a sole arbitrator appointed by the DIFC-LCIA Court pursuant to the DIFC-LCIA Arbitration Rules from a database of highly qualified local, regional and international arbitrators. (Exhibit 19, DIFC-LCIA Arbitration Rules, Article 5 "Formation of Arbitral Tribunal"). The DIFC Court is competent to assist and support, and within limited areas, to supervise and control the arbitral proceedings. The DIFC Court will be the curial court for recognition and enforcement purposes.[6]

### III.   NATURE OF THE DISCOVERY SOUGHT

25.   Applicant assistance from the United States District Court for the Southern District of New York to obtain intermediary bank discovery from Citibank, N.A., The Bank of New York Mellon, Société Générale US, HSBC Bank USA, N.A., BNP Paribas USA, JPMorgan Chase Bank, N.A., Barclays Bank PLC, Deutsche Bank Trust Co. Americas, Bank of Nova Scotia, UBS AG, Bank of America, N.A., Standard Chartered Bank US, Commerzbank AG US, and The Clearing House Payments Company, LLC, (collectively, the "Respondents") for use in the Contemplated Arbitration Proceeding. The Respondents are commonly known to act as correspondent, intermediary, or otherwise clearinghouse banks for U.S. Dollar-denominated wire transfers passing from domestic banks to international banks, and vice versa.

26.   Based on its investigation described above, Applicant has identified a series of individuals, companies and bank Accounts associated with Arion and Rao, as well as entities that appear to have engaged in suspicious transactions with Arion. Therefore, Applicant seeks information relating to those Accounts, entities and individuals, namely — Arion Metals FZE,

---

[6] http://www.difc-lcia.org/other-advantages-of-the-difc-lcia.aspx (explaining the recognition and enforcement procedure of DIFC-LCIA arbitral awards) (last visited February 4, 2020).

Prospecz Hotel Supplies FZ LLC, Meraki International Electronics Trading LLC, Arion Holiday Homes Rental LLC, Pheonix General Trading, Shreeji Overseas, Diggvijay Infrastructure, Arion Investments FZE, Aspire Metals Trading LLC, Ajith Rao Sridhar (also known as Ajeet Rao – full name Ajith Rao Krishna Rao Sridhar Rao Sridhar) and Anusha Sridhar Rao (the "Discovery Subjects").

27. Therefore, Applicant seeks to obtain meaningful information from the Respondents located in this District that are in the business of processing U.S. Dollar denominated wire transfers in New York City, and will have processed wire transfers relevant and probative to advance Applicant's Claims in the Contemplated Arbitration Proceeding it intends to initiate. Specifically, Applicant seeks discovery to obtain evidence of intermediary bank transfers and documents relating thereto to plead and prove its Claims that Arion breached the Agreements, and dissipated and misappropriated assets that should have been used to satisfy the Debt owed to Applicant.

28. Applicant seeks evidence maintained by the Respondents in New York City regarding U.S. Dollar-denominated wire transactions and documents relating thereto. Specifically, the discovery sought from the Respondents is evidence of wire transfers routed through the Respondents in New York City revealing the complete picture of Arion and Rao's movement of funds, and the identity of all entities or individuals that appear to have engaged in suspicious transactions with Arion and may have assisted Arion in dissipating and misappropriating its assets. In addition, as a result of Applicant's business dealings and interactions with Applicant and the evidence obtained by Applicant to date — the Agreements and account statements — it is clear that Arion conducts significant transactions in U.S. Dollar. Such evidence makes it very likely that the U.S. Dollar-denominated wire transactions routed

through New York City and documents relating thereto, will reveal the information sought by Applicant to advance its Claims in the Contemplated Arbitration Proceeding — namely, transactions of value made with funds that should have been used to satisfy the Debt owed to Applicant. Accordingly, the evidence sought is critical to plead and prove Applicant's Claims.

29. I am advised by New York counsel that the Respondents, from whom discovery is sought, reside or are found in the Southern District of New York, within the meaning of 28 U.S.C. §1782.

30. The Respondents are not expected to become a party to the Contemplated Arbitration Proceeding, and as such, this Application constitutes the only practical and timely method for obtaining the needed evidence for use there. Indeed, absent the instant Application, the complete evidence would almost certainly remain outside the reach of the arbitrator(s) in the DIFC-LCIA proceedings.

31. Further, there is no indication the arbitrator(s) in the DIFC-LCIA proceedings would not be receptive to the documentary evidence sought through the instant Application. Such evidence is likely admissible in DIFC-LCIA proceedings. The Application does not circumvent any proof-gathering restriction under the laws of England and Wales, the DIFC or the DIFC-LCIA Arbitration Rules.

32. The discovery sought to be served on Respondents is not intrusive or unduly burdensome because it is of limited scope. Applicant seeks limited records relating to wire transactions for which the Respondents were involved as originating bank, beneficiary bank, intermediate or correspondent bank to CHIPS, Fedwire, or where the Respondents otherwise facilitated interbank funds transfers, as well as documents relating thereto, for the limited period beginning October 1, 2018 to the present. This period is likely within the Respondents'

69467939-1

document retention policies and the documentary evidence sought is of the type that Respondents regularly and easily retrieve and produce as third parties or actual parties in litigation.

## IV. APPLICANT SHOULD NOT BE REQUIRED TO GIVE NOTICE TO ARION, THE DISCOVERY SUBJECTS AND RESPONDENTS

33. Applicant respectfully requests that (1) Applicant not be required to serve Arion, the expected respondent in the Contemplated Arbitration Proceeding, the Discovery Subjects or the Respondents with this Application and, (2) should the Court grant this Application, that Applicant not be required to serve Arion and the Discovery Subjects with the order granting the Application and the subpoenas issued to the Respondents.

34. As explained above, the discovery sought from the Respondents will assist Applicant in further assessment and development of its Claims in the Contemplated Arbitration Proceeding. Most importantly, the documentary evidence will assist Applicant in pleading and proving both Arion's breach of the Agreements and its engagement in fraud and fraudulent misrepresentations to the detriment of Applicant.

35. As a result of Applicant's efforts to recover its Debt without involving the DIFC-LCIA Court, the investigation conducted to date, and Arion's clear intent not to pay the Debt, Applicant has a good faith reason to believe that Arion has dissipated and misappropriated its assets that should have been used to satisfy the Debt, in order to evade its obligation to pay the Debt owed to Applicant.

36. In light of the above, notice of the Application and of the order granting the Application (should the Court grant the Application), would advance Arion's scheme by providing it the opportunity to potentially conceal or destroy evidence that could be used by Applicant in the Contemplated Arbitration Proceeding and/or further divert its assets, and would

delay Applicant's full understanding of Arion's movement of assets and discovery of the identity of other entities or individuals that may have assisted Arion in carrying out its scheme, and that may be subject to other proceedings brought by the Applicant.

37. The information sought through this *ex parte* Application is the only practical and efficient way Applicant can obtain the discovery sought. Applicant would be significantly delayed in obtaining critical information to advance its Claims if the Court requires notice of the Application and order granting the Application, which would ultimately prejudice Applicant.

38. Conversely, there would be no prejudice to the party (or parties) against whom the discovery is likely to be used in the Contemplated Arbitration Proceeding, as it would be permitted to adjudicate the admissibility of any discovery received by Applicant in the Contemplated Arbitration Proceeding at the appropriate time. Indeed, Article 22.1 (vi) of the DIFC-LCIA Arbitration Rules, "Additional Powers," provides that:

> The Arbitral Tribunal shall have the power, ***upon the application of any party*** … or upon its own initiative, but in either case ***only after giving the parties a reasonable opportunity to state their views*** and upon such terms … as the Arbitral Tribunal may decide … ***to decide whether or not to apply any strict rules of evidence (or any order rules) as to the admissibility, relevance or weight of any material*** tendered by a party on any issue of fact or expert opinion; and to decide the time, manner and form in which such material should be exchanged between the parties and presented to the Arbitral Tribunal. (Exhibit 18) (Emphasis added).

## V. CONCLUSION

39. In light of the foregoing, Applicant respectfully submits that all of the requirements of 28 U.S.C. § 1782 are met:

   a. The Respondents reside and/or are found in this District;

   b. Applicant is an "interested person" within the meaning of the statute; and

   c. Applicant seeks to obtain documents and testimony for use in a foreign proceeding.

40. To my knowledge, no previous application for this relief has been made in the United States.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this Third day of March, 2020, in Dubai, United Arab Emirates.

By: _____

James Fox
Partner
DWF (Middle East) LLP